# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLIE J. BRITTAIN, ) <br> ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> NATIONAL CASUALTY COMPANY, ) <br> ) <br> Defendant. ) | Civil Action No. 1:13-cv-0040 Erie <br> Judge Mark R. Hornak |

## OPINION

**Mark R. Hornak, United States District Judge**

This matter is before the Court upon Defendant National Casualty Company's Motion for Summary Judgment. (ECF No. 23). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons which follow, Defendant's motion is denied.

I. Background

On February 4, 2007, Plaintiff Billie J. Brittain ("Plaintiff") was operating a rental car on State Route 430 in Greenfield Township, Pennsylvania when she was struck by a vehicle operated by Jason Prody ("Prody"). Compl. ¶¶ 4, 7; Brittain Dep. Tr. at 64-68. As a result of the accident, Plaintiff alleges that she suffered severe bodily injuries. Compl. ¶ 5. At the time of the accident, Prody carried $25,000.00 in bodily injury protection pursuant to an insurance policy with State Farm Insurance. Compl. ¶ 9. The rental vehicle operated by Plaintiff was insured pursuant to a policy with Defendant National Casualty Company ("Defendant"). Compl. ¶ 10.

1

On November 6, 2008, Prody's insurance carrier tendered its $25,000.00 bodily injury policy limit to Plaintiff to settle her claim against Prody. Compl. ¶ 7. Plaintiff accepted this settlement from State Farm, but immediately indicated to Defendant that, as a result of the severity of her injuries, she intended to pursue a claim for underinsured motorist benefits ("UIM"). Compl. ¶¶ 11-12. Defendant promptly denied her claim on the basis that Plaintiff and/or the rental company had allegedly elected to waive UIM coverage. Compl. ¶¶ 12-13.

On February 3, 2009, Plaintiff filed a declaratory judgment action in state court seeking a declaration that the waiver of UIM coverage was invalid and asserting claims of bad faith, negligence and breach of contract. Compl. ¶¶ 12-13 and Ex. A. On August 11, 2010, Judge Garhart ruled that the UIM waiver form relied upon by Defendants to deny coverage was "null and void" because the form had failed to include the specific phrase "I knowingly and voluntarily reject this coverage" as required by 75 Pa.C.S.A. § 1731(c). Compl. ¶ 14; Def.'s Concise Statement of Material Facts, ¶ 19; Def.'s Ex. C. In light of his determination that Plaintiff had a legally valid right to pursue UIM benefits, Judge Garhart declined to address Plaintiff's remaining claims. Defendant's Ex. C.

The parties subsequently attempted to resolve their dispute through arbitration. Compl. ¶¶ 15-16; Def.'s Concise Statement of Material Facts, ¶ 20; Def.'s Ex. D. Before an arbitration panel could be selected, however, a discrepancy arose concerning the amount of available UIM coverage. Plaintiff indicated that defense counsel had previously represented that the policy provided for up to $1,000,000 in UIM benefits, while Defendant averred that only $15,000 was available. Compl. ¶¶ 15-16; Def.'s Concise Statement of Material Facts, ¶¶ 21-22; Def.'s Ex. D. Upon Plaintiff's motion, the state court dissolved the arbitration panel on grounds of mutual

mistake, concluding that "at the time the agreement to arbitrate was formed, both parties were mistaken as to the amount of available UIM coverage." Def.'s Ex. D.

On February 7, 2013, Plaintiff filed the instant federal action seeking UIM benefits. Compl. ¶¶ 20-24. On February 25, 2013, Defendant filed a motion to dismiss, arguing that Plaintiff's claim was barred by Pennsylvania's four-year statute of limitations governing contractual claims for UIM benefits. ECF No. 4. At oral argument, former Chief Judge Sean J. McLaughlin denied the motion to dismiss "without prejudice to re-visit the argument under a Rule 56 motion." ECF No. 13.

On August 28, 2013, this matter was transferred to the docket of the undersigned as the result of Chief Judge McLaughlin's resignation. ECF No. 21. On October 11, 2013, Defendant filed the instant motion for summary judgment, once more arguing that Plaintiff's claim is barred by the applicable statute of limitations. ECF No. 23. The motion is fully briefed and ripe for review.

II. Standard for Review

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

3

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

III. Discussion

The sole basis for Defendant's motion for summary judgment is that this action is barred by the applicable statute of limitations. It is well-settled under Pennsylvania law that a four-year statute of limitations governs claims for UIM benefits. See 42 Pa.C.S.A. § 5525(a)(8) (stating that "[a]n action upon a contract, obligation or liability founded upon a writing" must be "commenced within four years"); State Farm Mutual Automobile Ins. Co. v. Rosenthal, 484 F.3d 251, 253 n. 3 (3rd Cir. 2007) (four-year statute of limitations set forth in 42 Pa.C.S.A. § 5525(a)(8) applies to UIM claims). Defendant contends that the limitations period began to run no later than November 6, 2008, when Plaintiff settled her claim with Brody's insurer. Plaintiff responds that the limitation period commenced no earlier than August 11, 2010, when Judge Garhart ruled that the UIM waiver relied upon by Defendants to previously deny coverage was invalid. Because Plaintiff filed this action five years after her settlement with State Farm, but

4

only three years after the state court's ruling, the determination as to when the statute of limitations began to run is dispositive.

Significantly, the Third Circuit has directly addressed when the statute of limitations begins to run on a claim for UIM benefits. Rosenthal, 484 F.3d 251. In Rosenthal, the plaintiff, a State Farm insured, was struck and severely injured in a motor vehicle accident which occurred on June 8, 1998. Id. at 252. On June 9, 2003, Rosenthal reached an agreement to settle his claim against the offending motorist for $85,000.00. Id. Approximately one year later, on July 22, 2004, Rosenthal's attorney demanded UIM benefits from State Farm. Id. at 253. In response, State Farm filed a complaint on March 11, 2005 seeking a declaratory judgment that Rosenthal's UIM claim was barred by the four-year Pennsylvania statute of limitations. Id. at 253. The district court granted summary judgment in favor of Rosenthal, reasoning that the limitations period did not begin to run until the date on which the insurer denied the insured's demand for UIM benefits. Id.

On appeal, the Third Circuit affirmed on different grounds, holding that the statute of limitations on a UIM claim begins to run "on the date on which the insured settles with the adverse driver for less than the value of the insured's damages." Id. at 254. The Court framed its analysis by reviewing several Pennsylvania Superior Court decisions involving *un*insured motorist benefits and noting the consensus that "the four-year statute of limitations begins to run when the right to payment of a benefit accrues to the insured, i.e., when '(1) the insured is in a motor vehicle accident; (2) the insured sustains bodily injury as a result of the accident; and (3) *the insured knows of the uninsured status of the other owner or operator.*'" Id. (quoting Clark v. State Farm Auto Ins. Co., 599 A.2d 1001, 1005 (Pa. Super. 1991)) (emphasis added); see also Boyle v. State Farm Mutual Automobile Ins. Co., 456 A.2d 156, 159-60 (Pa.Super. 1983) (same). The Court opined that this reasoning applies with equal force to *under*insured motorist claims, but noted that it is often "only at the time that [the insured] actually settled . . . with the underinsured motorist's insurance company . . . that the status of the situation as one involving an underinsured motorist was definitely ascertainable." Id. (quoting Wheeler v. Nationwide

5

Mutual Ins. Co., 749 F.Supp. 660, 662 (E.D. Pa. 1990)). Consequently, the Court held that the statute of limitations on Rosenthal's claim did not begin to run until June 9, 2003, when he settled his claim with the adverse driver for less than the full amount of his injuries. Id. at 257 (holding that "the four-year statute of limitations begins to run when the insured settles his claim with or obtains an award from the underinsured driver").

The holding in Rosenthal was recently followed in Hopkins v. Erie Ins. Co., 2013 WL 1694810 (Pa. Super. 2013), wherein the court similarly concluded that the limitations period on an action for underinsured motorist benefits commences when "the insured settles with, or secures a judgment against, the underinsured owner or operator." Id. at *7. In Hopkins, the injured driver settled his claims against the underinsured motorist in 2004, but failed to file a legal action seeking UIM benefits from the insurance company until 2010. Citing Rosenthal, Clark and Boyle, the superior court determined that Hopkins' claim was time-barred for the reasons set forth therein. Id. See also Clark, 599 A.2d at 1005 (right to payment of benefits accrues when "the insured knows of the uninsured status of the other owner or operator"); Boyle, 456 A.2d at 159-60 (same).

The significance of the date of settlement was again reinforced in Wilson v. Great American Insurance Group, 2013 WL 5786180 (E.D. Pa. Oct. 28, 2013). In Wilson, the plaintiff, an automobile accident victim, received a settlement offer from the tortfeasor's insurance company prior to June, 2008, but did not formally execute a document releasing the tortfeasor from further liability until September 17, 2008. Id. at *1. Relying on the date of the initial settlement offer, the insurance company suggested that plaintiff's subsequent UIM action, instituted on September 12, 2012, was untimely. The court disagreed, holding that the proper settlement date – and, consequently, the date on which the statute of limitations began to run – was that on which the plaintiff "accepted the offer to settle his underlying claim by signing the release" rather than the date on which the insurance company made the initial settlement offer. Id. at *4 (citing Hopkins, 65 A.2d at 459 (statute of limitations does not begin to run until "the insured settles with, or secures a judgment against, the underinsured owner or operator.");

6

Rosenthal, 484 F.3d at 256 (holding that the statute of limitations begins to run "when the insured settles his claim with or obtains an award from the underinsured driver")).

The aforementioned cases suggest that Plaintiff's cause of action accrued on November 6, 2008, when she settled her claim with Prody's insurance company for the limits of his policy. Plaintiff responds by citing Smith v. United States Fid. & Guar. Co., 40 Pa. D. & C.4th 381 (Pa. Com. Pl. Dec. 17, 1998), for the proposition that the limitations period did not begin to run until the state court invalidated the UIM waiver. In Smith, the plaintiff, an accident victim, received a settlement offer from the tortfeasor's insurance company in July of 1993, but could not accept that offer until October because of her own insurance company's delay in determining whether to waive its subrogation rights. Id. at 385. The court held that the statute of limitations did not begin to run until October, reasoning that an insurance company should not be able to shorten the limitations period by its "own conduct in not providing for a timely resolution of its position on subrogation." Id. at 389. Plaintiff suggests that Defendant's reliance on the invalid UIM waiver to deny the existence of benefits represented a similar attempt to shorten the limitations period for its own benefit.

Plaintiff's reliance on Smith is misplaced. As an initial matter, there is simply no evidence in the record to suggest that Defendant failed to promptly and decisively respond to Plaintiff's request for waiver and permission to settle, as in Smith. See Complaint, ¶¶ 7-12. Moreover, the decision in Smith predates the emergence of the current rule, set forth in Rosenthal, Hopkins and Wilson, that the statute of limitations on a UIM claim accrues on the date of settlement. See Rosenthal, 484 F.3d at 256; Hopkins, 65 A.2d at 459; Wilson, 2013 WL 5786180 at *1. Per her own Complaint, Plaintiff acknowledges that she settled her claims against Prody when "Prody's insurance carrier, State Farm Insurance, tendered its $25,000.00 bodily injury policy limit to settle Plaintiff's third party claim against Mr. Prody" on "November 6, 2008." Complaint, ¶ 7. There is simply no reasoned basis on which to conclude that any other date – including that of Judge Garhart's ruling – had any bearing as to when Plaintiff's claim

accrued. Consequently, and consistent with Rosenthal, Hopkins and Wilson, the Court concludes that Plaintiff's claim for UIM benefits accrued on November 6, 2008.

This conclusion does not end the Court's inquiry, however. Plaintiff alternatively contends that, even if the statute of limitations did begin to run in 2008, the limitations period should be equitably tolled as the result of Defendant's "fraud, deception, and/or concealment of Plaintiff's right to claim UIM benefits." It is well-settled under Pennsylvania law that "[m]ere mistake, misunderstanding or lack of knowledge on the part of the plaintiff is not sufficient to toll the running of the statute of limitations." Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548, 556 (1985) (citing Nesbitt v. Erie Coach Company, 204 A.2d 473, 475-76 (1964)). However, "if through fraud or concealment the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of limitation of action." Nesbitt v. Erie Coach Company, 204 A.2d 473, 475-76 (1964) (quoting Plazak v. Allegheny Steel Company, 324 Pa. 422 (1936)). In other words, the defendant "must have done something amounting to an affirmative inducement to plaintiff to delay bring the action." Ciccarelli, 757 F.2d at 556 (citing Gravinese v. Johns-Manville Corp., 471 A.2d 1233, 1238 (Pa. Super. 1984)). Application of the doctrine of estoppel in this context "does not [require] fraud in the strictest sense encompassing an intent to deceive, but rather fraud in the broadest sense which includes an unintentional deception." Id. (citing Guy v. Stoecklein Baking Co., 1 A.2d 839 (1938)).

In the instant action, Plaintiff first suggests that Defendant's reliance on the subsequently invalidated UIM waiver to deny benefits represented fraudulent and misleading conduct, rather than simply an incorrect belief as to the validity of the form, and that such conduct should toll the statute of limitations. This argument is unavailing. Defendant's reliance on the waiver cannot be described as an attempt to conceal anything, but rather, was an extremely open and obvious denial of benefits based upon a reasonable (albeit, ultimately unsuccessful) legal position, the effect of which was to place Plaintiff on notice that prompt action to challenge that denial was required. Moreover, even if Defendant's reliance on the

waiver could somehow be construed as fraud or concealment, it is evident that Plaintiff did not "relax [her] vigilance or deviate from [her] right of inquiry" as the result of Defendant's position. See Nesbitt, 204 A.2d at 475-76. To the contrary, Plaintiff promptly challenged the validity of that waiver by filing her declaratory judgment action in state court, receiving a favorable ruling. Thereafter, despite having overcome the UIM waiver hurdle, Plaintiff waited another three years before filing the instant action, during which time the limitations period ran out. Under these circumstances, the Court finds no basis for Plaintiff's allegation of fraud or concealment concerning the invalid waiver form.

The Court reaches a different conclusion, however, with respect to Plaintiff's assertion that defense counsel induced her to forego her right to file a civil action in favor of arbitration by misrepresenting the amount of UIM coverage available. As previously noted, at the time that the parties initially entered into their agreement to arbitrate, defense counsel had mistakenly represented that the UIM policy at issue provided for up to $1,000,000.00 in benefits. Defense counsel later acknowledged that this had been a mistake and asserted that the policy provided for only $15,000.00. Based on this misunderstanding, Plaintiff filed a successful petition to dissolve the arbitration panel, persuading the state court that she would not have voluntarily agreed to submit her claim to arbitration if not for the mistaken representation that $1,000,000.00 was available. She now contends that Defendant should be equitably estopped from asserting the statute of limitations as a defense as the result of defense counsel's misrepresentation concerning the amount of UIM benefits.

An analogous situation was presented in Nesbitt, in which an injured bus passenger instituted an action against an insurance company several years after the statutory limitations period had expired. Id. at 475. The passenger averred that one of defendant's insurance adjusters had consistently assured her that her claim would be resolved in her favor once her injuries were fully known, advised her not to file suit because it would be a waste of attorney's fees, and concealed the fact that the defendant had already denied liability for her injuries. Id. at 476. The Pennsylvania Supreme Court held that, if facts demonstrating that "the agents of

9

defendant misled the plaintiff into believing that the case would be settled when all if the facts were in, and thus lulled her into a sense of false security as to timely institution of her action," then tolling of the statute of limitations would be appropriate. Id. at 477; see also O'Brien v. Sovereign Camp of the Woodmen of the World, 184 A. 546, 548 (Pa. 1936) (estopping an insurer from asserting a statute of limitations defense where the insurer used "friendly negotiations" to "influence the plaintiff to withhold any litigation").

Defendant, in response, points to several cases holding that "an effort undertaken in order to arrange for an arbitration on a claim for UIM benefits does not automatically serve to toll the limitations period." Defendant's Brief in Support, at 18 (citing Liberty Mut. Fire Ins. Co. v. Weisbaum, 2011 4632479, at *3 (E.D. Pa. Oct. 5, 2011); Walker v. Providence Ins. Co., 1998 WL 195652, at *3 (E.D. Pa. Mar. 31, 1998)). While this assertion may, as a general proposition, be accurate, the cases cited are readily distinguishable. Each involved an insurance policy that contained a mandatory arbitration clause that required the parties to submit their UIM claim to arbitration in a timely fashion, a factual scenario not presented in the instant case. Moreover, none of the cases cited by Defendant involved a party's attempt - whether by way of fraud or innocent mistake - to induce its opponent to forego their right to file a timely civil action in favor of voluntary arbitration.

On balance, it is evident that Plaintiff, relying on Defendant's affirmative (albeit inadvertent) misrepresentation concerning the amount of available UIM funds, materially altered her litigation strategy by agreeing to give up her right to file a civil action in favor of a flawed arbitration process. A review of the pertinent dates supports this conclusion. The initial agreement to arbitrate was memorialized between the parties on or before April 30, 2010. Plaintiff's Ex. 2. Plaintiff filed her petition to dissolve the arbitration panel on July 24, 2012, roughly three and a half months before the expiration of the statutory limitations period. Plaintiff's Ex. 3. On December 21, 2012, shortly after the limitations period had expired, Judge Garhart issued his decision dissolving the panel. Plaintiff filed the instant action promptly thereafter. Given this timeline, it would appear that the primary cause of Plaintiff's failure to

commence this action in a timely manner was the detour into arbitration occasioned by Defendant's misrepresentation. Under these circumstances, Defendant's conduct represents precisely the type of "inducement . . . to delay bringing the action" that warrants the application of equitable estoppel.[1] See Ciccarelli, 757 F.2d at 556; Nesbitt, 204 A.2d at 476.

IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied. An appropriate order will issue.

Mark R. Hornak
United States District Judge

Filed:


cc: All Counsel of Record

---

[1] This conclusion is further buttressed by two important policies. First, the Court fears that an agreement to voluntarily submit a claim to arbitration might turn into a trap for the unwary if it were to conclude that tolling and/or estoppel is unwarranted even where the initial agreement to arbitrate is based upon a fraudulent misrepresentation. See, e.g., LaCourse v. Firemen's Ins. Co. of Newark, N.J., 756 F.2d 10, 12 (3rd Cir. 1985) (noting the general policy in federal and Pennsylvania courts favoring arbitration as a mechanism for dispute resolution). Secondly, such an outcome would unfairly penalize Plaintiff for electing to utilize the appropriate state law procedure to dissolve the arbitration agreement before filing a potentially duplicative civil action.