# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BILLIE J. BRITTAIN,<br><br>        Plaintiff,<br>v.<br><br>NATIONAL CASUALTY COMPANY,<br><br>        Defendant. | Civil Action No. 1:13-cv-0040 Erie<br><br>Judge Mark R. Hornak |

## OPINION

**Mark R. Hornak, United States District Judge**

This matter is before the Court upon Cross Motions for Partial Summary Judgment filed by Plaintiff Billie J. Brittain ("Plaintiff") (ECF No. 39) and Defendant National Casualty Company ("Defendant") (ECF No. 43). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the reasons which follow, Plaintiff's motion is denied and Defendant's motion is granted.

## I. BACKGROUND

On February 4, 2007, Plaintiff was standing in the roadway on State Route 430 in Greenfield Township, Pennsylvania, when she was struck and severely injured by a vehicle operated by Jason Prody ("Prody"). Compl. ¶¶ 4-5, 7. At the time of the accident, Plaintiff was in possession of a 2007 Chevrolet Impala that she had rented from General American Rentals d/b/a Thrifty Rental Cars ("Thrifty"). Id. ¶ 10. The Impala was insured under a policy of insurance issued by Defendant under policy number CAO-0205015. Id. The declarations page contained in that policy indicated that the policy generally provided $1,000,000.00 in bodily injury liability coverage. ECF 45-1 at 13. However, a "Daily Auto Rental Endorsement"

appended to the policy purported to limit bodily injury liability for persons renting vehicles from the policy holder to "$15,000 Each Person." *Id.* at 37-38.

Prody, at the time of the accident, carried only $25,000.00 in bodily injury protection. Compl. ¶ 9. On November 6, 2008, Prody's insurance carrier tendered its $25,000.00 bodily injury policy limit to Plaintiff to settle her claim against Prody. *Id.* ¶ 7. Because of the severity of her injuries, Plaintiff sought underinsured motorist benefits ("UIM") from Defendant pursuant to its policy with Thrifty. *Id.* ¶¶ 11-12. Defendant initially denied her claim on the grounds that Thrifty had signed a form rejecting UIM coverage. *Id.* ¶¶ 12-13. Plaintiff responded by filing a declaratory judgment action in state court. *Id.*

In the state court action, filed on February 3, 2009, the primary issue before the court was whether the UIM coverage waiver provided by Defendant and signed by Thrifty was valid under Pennsylvania law. On August 11, 2010, Judge John Garhart ruled that the UIM waiver form was "null and void" because the form lacked the specific phrase "I knowingly and voluntarily reject this coverage" as required by 75 Pa.C.S.A. § 1731(c). Compl. ¶ 14.

The parties subsequently attempted to resolve their dispute through arbitration. Compl. ¶¶ 15-16. However, a discrepancy immediately arose concerning the amount of available UIM coverage. Plaintiff indicated that defense counsel had previously represented that the policy provided for up to $1,000,000 in UIM benefits, while Defendant now took the position that only $15,000 was available. *Id.* In light of this dispute, Judge Garhart dissolved the arbitration panel on grounds of mutual mistake. Def.'s Ex. B.

On February 7, 2013, Plaintiff filed the instant federal action seeking UIM benefits. Compl. ¶¶ 20-24. During the initial status conference, held on July 22, 2013, the parties identified two legal issues that warranted early attention. The first was whether Plaintiff's action

2

was barred by the applicable statute of limitations, and the second concerned the amount of available insurance coverage under the policy CAO-0205015. The Court ordered the parties to file dispositive motions on each. ECF No. 18.

On October 11, 2013, Defendant filed a motion for summary judgment on the basis of Pennsylvania's four-year statute of limitations governing contractual claims for UIM benefits. ECF No. 4. That motion was denied on January 27, 2014. ECF No. 32. Shortly thereafter, the Court ordered the parties to file dispositive motions addressing the primary remaining dispute: the scope of available insurance coverage under the operative policy. ECF No. 35. The instant motions for summary judgment ensued. ECF Nos. 39, 43. Each motion is now fully briefed and ripe for review.

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Country Floors, Inc.*

3

*v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990)). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Company v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

## III. DISCUSSION

The Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") requires insurers to offer uninsured ("UM") and UIM coverages. 75 Pa. C.S.A. § 1731(a) ("No motor vehicle liability insurance policy shall be delivered or issued in this Commonwealth . . . unless uninsured motorist and underinsured motorist coverages are offered therein . . ."). While it is mandatory for an insurer to offer such coverages, a driver may elect to waive UIM or UM coverage or agree to a reduced amount of coverage. *Id.* ("Purchase of uninsured motorist and underinsured motorist coverages is optional."). Any such waiver must strictly comply with the statutory requirements of Section 1731(c) of the MVFRL. If a driver attempts to waive UIM and UM coverage but fails to satisfy the statutory requirements, then the statute provides that "uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." 75 Pa. C.S.A. § 1731(c.1).

4

As an initial matter, the parties agree that the UIM waiver signed by Thrifty was rendered "null and void" by Judge Garhart's ruling in the underlying state court action. The parties also agree that, as a result of that invalid waiver, Plaintiff is entitled to UIM coverage in an amount "equal to the bodily injury liability limits" of policy CAO-0205015. 75 Pa. C.S.A. § 1731(c.1). The lone remaining dispute concerns the amount of bodily injury liability coverage available under that policy. This determination is "a question of law properly performed by the Court." *Meyer v. Cuna Mut. Ins. Society*, 648 F.3d 154, 161 (3rd Cir. 2011).

To that end, policy CAO-0205015 contains a section entitled "Commercial Auto Coverage Part Business Auto Coverage Form Supplemental Declarations." ECF 45-1 at p. 13. This declarations section provides that the general bodily injury liability limit applicable to Thrifty's fleet of rental cars is $1,000,000. *Id.* Policy CAO-0205015 also contains a variety of endorsements. Pertinent to the instant dispute, endorsement CA-51, styled a "Daily Auto Rental Endorsement," purports to amend the general policy provisions in situations where the operator of a covered vehicle is a "rentee."[1] Specifically, endorsement CA-51 states that "the Limit of Insurance for Liability Coverage" provided to a "rentee" is "the limit shown in the SCHEDULE of this endorsement or the limits specified by a compulsory or financial responsibility law of the jurisdiction in which the accident occurred." *Id.* at 38. The referenced schedule indicates that the bodily injury liability limit for rentees is "$15,000 Each Person" and "$30,000 Each 'Accident.'"[2] *Id.*

---

[1] The endorsement defines a "rentee" as "a holder of a 'rental agreement' . . . which provides for the holder's use of an 'auto' for a period of less than one year." ECF 45-1 at 40. There is no dispute that Plaintiff was a "rentee" within the definition of the endorsement.

[2] These figures are equal to the minimum amount of bodily liability injury insurance that a driver must purchase in order to comply with Pennsylvania's "financial responsibility" law. 75 Pa. C.S.A. § 1702.

5

Viewed as a whole, policy CAO-0205015 could not be clearer. The policy provides $15,000 in bodily injury liability coverage for rentees and $1,000,000 in bodily injury liability coverage for non-rentees. In other words, while company employees are entitled to $1,000,000 in coverage while operating the vehicles in their rental fleet, the customers who rent those vehicles are entitled to only $15,000 in coverage. This plain reading of the involved policy is buttressed by an affidavit submitted by Tracy Motley, a Thrifty Contract Transportation Manager, explaining that this was precisely the scope of the policy and the endorsement:

> The auto liability insurance coverage which provides $1,000,000.00 in liability insurance applies only to employees of the insured, Thrifty Car Rental and Dollar Car Rental and not to those who rent motor vehicles from Thrifty Car Rental and Dollar Car Rental.

ECF 45-3 at ¶¶ 14-15. Moreover, a review of several Pennsylvania cases reveals that the use of endorsements to create this type of multi-tiered coverage is not uncommon. *See, e.g., Harstead v. Diamond State Ins. Co.*, 723 A.2d 179, 181 (Pa. 1999) (addressing an insurance policy that provided, by way of endorsements, $100,000 in coverage for lessees and $500,000 in coverage for non-lessees); *Continental Ins. Co. v. McKain*, 820 F.Supp. 890, 900-01 (E.D. Pa. 1993) (policy provided $10,000,000 in coverage to rental company employees but only $100,000/300,000 to lessees); *Lexington Ins. Co. v. Reilly*, 1987 WL 26493, *1 (E.D. Pa. Dec. 3, 1987) (policy provided insurance coverage to rental agency employees but contained an endorsement excluding coverage for rentees).

Attempting to avoid this result, Plaintiff raises the novel argument that endorsement CA-51 is contrary to the MVFRL because it reduces the amount of UIM coverage available without meeting the requirements of 75 Pa. C.S.A. §§ 1731 and 1734. The latter provision, Section 1734, provides that an insured who wishes to request UIM coverage in an amount other than that of the bodily injury liability limit must do so in writing. *See* 75 Pa. C.S.A. § 1734 ("A named

6

insured may request in writing the issuance of coverages under section 1731 . . . in amounts equal to or less than the limits of liability for bodily injury."). Plaintiff contends that endorsement CA-51 has the effect of reducing the amount of available UIM coverage and, as such, must comply with Section 1734's "in writing" requirement. In the absence of any such written request, Plaintiff maintains that the endorsement is null and the default amount of UIM coverage available is the larger amount set forth in the policy itself.

This argument misses the mark. As noted above, Section 1734 is only invoked when a motorist seeks UIM coverage in an amount that is less than the bodily injury limit of the policy. However, despite Plaintiff's assertion to the contrary, endorsement CA-51 does not reduce the policy's UIM coverage limit to an amount *below* that of the policy's bodily injury limit. Rather, the endorsement establishes the bodily injury liability limit of the policy in the first instance when a vehicle is being operated by a rentee. For such individuals, the bodily injury liability limit provided by the policy and the default amount of UIM coverage available pursuant to Section 1731(c) are each the same: $15,000. No reduction in UIM benefits occurred because Plaintiff was never entitled to anything more. That the policy provides a different amount of coverage to non-rentees is of no moment; after all, it is well-settled that "endorsements by their very nature are designed to trump general policy provisions, and where a conflict exists between provisions in the main policy and the endorsement, the endorsement prevails." *Nationwide Mut. Ins. Co. v. Schmidt*, 307 F. Supp. 2d 674, 677 (W. D. Pa. 2004).

None of the cases cited by Plaintiff warrant a different result. For example, in *Peele v. Atlantic Express Transportation Group, Inc.*, a case relied upon heavily by Plaintiff, the insurance policy at issue provided for "$2,000,000 in liability coverage and 'statutory' UM/UIM coverage." *Peele*, 840 A.2d 1008, 1009 (Pa. Super. 2003). The insurance company took the

7

position that the policy's reference to "statutory" UIM coverage meant the statutory *minimum* available. The trial and appellate courts each disagreed, concluding that, because the word "minimum" did not appear anywhere in the policy, the reference to "statutory" UIM coverage necessarily referred to the default UIM coverage specified by Section 1731:

> The [policy] in this case provided for "statutory" UM/UIM coverage. The trial court held that this term was unambiguous, and referred to the statutory language of 75 Pa. C.S.A. § 1731, which requires that insurers offer UM/UIM coverage to their insureds, and if such coverage is rejected by the insureds, the rejection must be in writing in accordance with the forms set forth in the statute. Furthermore, the statute provides that if a proper rejection is not obtained by the insurer, "uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits." In this case, the bodily injury liability limits were $2,000,000.

*Id.* at 1011-12. Unlike in the instant case, there was never any dispute as to the default amount of bodily injury liability coverage available.

Plaintiff's citation to *Insurance Co. of the State of Pennsylvania v. Miller* is similarly unavailing. In *Miller*, the insurance policy at issue provided for bodily injury limits of $1,000,000. *Miller*, 627 A.2d 797, 799 (Pa. Super. 1993). An endorsement to the policy stated:

> In those jurisdictions that allow an Insured to reject his right to Uninsured Motorist Coverage, Underinsured Motorist Coverage or Personal Injury Protection coverage, by its signature affixed hereto, the Insured evidences his intent to so reject.

*Id.* at 799-800. The lone issue before the court was whether this language was sufficient to effectuate a valid waiver of UIM and UM coverage. *Id.* at 800. The court ultimately concluded that it was not, primarily because the endorsement did not contain "the statutorily-required language" for a waiver. *Id.* In the absence of a valid waiver, the court held that the amount of UIM coverage defaulted to the bodily injury limit: $1,000,000. *Id.*

Neither of the insurance policies addressed in *Peele* and *Miller* contained an endorsement that provided for a different amount of bodily injury liability coverage for a particular class of

8

vehicle operators, as in the instant case. Consequently, neither court was asked to consider the effect of such an endorsement on the default amount of UIM coverage available by statute. Indeed, the conclusion ultimately reached by both courts – that the default amount of UIM coverage available by statute is equal to the bodily injury liability limit of a policy – is entirely consistent with the Court's conclusion that Plaintiff is entitled to recover only $15,000 in the instant action.

In light of the foregoing, the Court concludes and declares that policy CAO-0205015, considered in conjunction with endorsement CA-51, clearly and unambiguously provides only $15,000 in bodily injury liability coverage to a rentee such as Plaintiff. Pursuant to 75 Pa. C.S.A. § 1731(c), this amount is also the default amount of UIM coverage available under the policy. Consequently, Plaintiff is entitled to no more than $15,000 in UIM benefits in the instant action.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied. Defendant's Motion for Summary Judgment is granted. An appropriate order will issue.

_____
Mark R. Hornak
United States District Judge

Dated: September 11, 2014

cc: All Counsel of Record